UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VOMELA SPECIALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>AMY ALLEN-ROSS, et al.,<br><br>Defendants. | Case No. 3:26-CV-1423-CCB-SJF |

**OPINION AND ORDER**

Before the Court are Plaintiff Vomela Specialty Company's Motion for a Preliminary Injunction and Evidentiary Hearing (ECF 3), and Motion for Expedited Discovery. (ECF 6).

Vomela argues that "limited expedited discovery" is necessary for the Court to have "a fair and reasonably complete evidentiary record at the preliminary-injunction hearing" and before the Court ultimately rules on the motion for a preliminary injunction. (*Id.* at 1).

Defendants Amy Allen-Ross and Sharpline Converting, Inc. (collectively, "Defendants") oppose both motions and have filed briefs to that effect. (ECF 15; 17). Defendants do not raise express arguments in either brief against a hearing itself. (*See generally id.*). Instead, Defendants argue that Vomela's expedited discovery requests are (1) based on unverified allegations, (2) premature, (3) overbroad, (4) unrelated to an emergency or imminent harm, and (5) "unfairly and overly burdensome." (ECF 17 at 4–11).

## I. Relevant Background

Vomela and Defendant Sharpline both design and market graphics products and services, including for the recreational vehicle industry. (ECF 18). Vomela is a Minnesota corporation that conducts "substantial business" at its Elkhart, Indiana location. (ECF 18 at 2). Sharpline is a Kansas corporation that also conducts business from an Elkhart office. (*Id.* at 2). Though the parties' pleadings conflict as to the exact duration,[1] Defendant Allen-Ross worked for Vomela as early as July 1, 2013, before terminating on May 29, 2026. (14-1 at 1; 17 at 2; ECF 18 at 4). Two days after terminating her employment with Vomela, Allen-Ross began working for Sharpline. (ECF 14-1 at 3).

On July 1, 2013, Allen-Ross signed a "Confidentiality and Non-Compete Agreement" (the "Agreement") that, among other things, prohibited Allen-Ross from "at any time . . . us[ing], reveal[ing], report[ing], publish[ing], transfer[ing] or otherwise disclos[ing] to any person, corporation or other entity, any of the Confidential Information without the prior written consent of the President of the Company." (*Id.* at 5). Additionally, the Agreement prohibited Allen-Ross—for a period of one year—from (1) employing or seeking to employ anyone currently employed (in conjunction with the agreement) at Vomela, (2) soliciting any person to terminate an employment relationship with Vomela; (3) soliciting, providing, or offering retail products competitive to Vomela to any customer of Vomela with whom Allen-Ross had direct or

[1] Vomela asserts Defendant Allen-Ross worked for the company for 20 years (ECF 18 at 4). Defendants state, in response, that Defendant Allen-Ross worked for Vomela for only 13 years. (ECF 17 at 2; 14-1 at 1).

indirect contact; (4) accepting "business from any business account or customer" of Vomela if such a customer was one of Vomela's accounts during Allen-Ross's employment; and (5) attempting to interfere with Vomela's accounts, consultants, customers, employees, or vendors. (*Id.* at 5–7).

According to Allen-Ross, she informed Vomela of her desire to relocate to Florida in October 2025 and February 2026, each time unsuccessfully proposing to work remotely. (ECF 14-1 at 2). Allen-Ross admits that she began "discussions" with Sharpline "about possible employment" in early April 2026. (*Id.*). Vomela alleges that on May 8, 2026, Allen-Ross notified Vomela that she was "retiring." (ECF 18 at 7). Vomela further alleges that at an unspecified time before her departure, Allen-Ross deleted "approximately three months of sent emails from her Vomela email account." (*Id.*). Vomela states that they recovered "at least some" of those deleted emails. (*Id.*).

Just before and after Allen-Ross terminated her employment with Vomela alleges, Vomela alleges three customer projects were illicitly disclosed or tampered with: (1) the Keystone RV Company - TT Sprinter Project (the "Keystone Project"), (2) the Brinkley 2027 Model Project (the "Brinkley Project"), and (3) the Grand Design RV – Momentum Project (the "Grand Design Project"). (*Id.* at 7–8). According to the First Amended Complaint, Vomela developed designs for the Keystone Project over several months with the final design being approved on May 7, 2026. (*Id.* at 7). Allen-Ross allegedly downloaded "multiple documents containing sensitive design and pricing information relating" to the Keystone Project, though the First Amended Complaint does not specify which device or application received the downloaded documents. (*Id.*).

On June 11, 2026, Keystone RV Co. informed Vomela that they accepted the Keystone Project design and requested "production estimates." (*Id.* at 9). Vomela alleges that five days later, Keystone RV Co. "submitted a competing design that was strikingly similar to Vomela's," differing "only in minor respects." (*Id.*).

Similarly, Vomela pleads that on May 19, 2026, Allen-Ross emailed "design-related materials" relating to the Brinkley Project from her Vomela-work email to her personal email. (*Id.* at 8). At some point before terminating, Allen-Ross allegedly solicited several employees to leave Vomela for Sharpline, including Michelle Camp, Stewart Schneider, and Vomela contractor Megan Glaub. (*Id.* at 13–14). According to the First Amended Complaint, Glaub was "the designer responsible for" the Brinkley Project. (*Id.* at 11). After Allen-Ross, Camp, Schneider, and Glaub all left Vomela, the latter three jointly participated in a meeting on August 18, 2026, with Brinkley RV in which they presented a design "nearly identical" to Vomela's. (*Id.* at 12). Brinkley subsequently accepted Sharpline's design because the "price was lower than Vomela." (*Id.*). Vomela alleges that confidential information regarding the Brinkley Project was shared with Sharpline, leading to their ability to undercut Vomela's bid. (*Id.*).

Finally, Vomela maintains that while Allen-Ross was still in their employ, she was involved in the Grand Design project, with access to all pricing information, design-development materials, customer communications, project specifications, and production-planning information. (*Id.* at 8). Vomela alleges that Allen-Ross stalled or otherwise inhibited the Grand Design project's progress while still employed. (*Id.* at 8–9). After terminating her employment, Vomela asserts that Allen-Ross transmitted

confidential information relating to the Grand Design project to Sharpline, leading to the Grand Design opportunity moving to Sharpline. (*Id.*).

Vomela sent a cease-and-desist letter to Sharpline on June 26, 2026. (ECF 15 at 7). Sharpline responded through counsel and offered assurances that it had "walled off" Allen-Ross from Sharpline's efforts to court clients also pursued by Vomela. (*Id.*). Despite the assurances, Vomela filed suit on September 15, 2026, in Elkhart Superior Court. (ECF 2; 3; 6). Defendants removed the case to this Court on September 29, 2026, citing diversity jurisdiction. (ECF 1). Vomela later filed a First Amended Complaint on October 22, 2026. (ECF 18).

## II. Analysis

Rule 65 of the Federal Rules of Civil Procedure contemplates the availability of evidentiary hearings before the ultimate ruling on a motion for a preliminary injunction. Fed. R. Civ. P. 65(a)(2). Whether a hearing is necessary to decide the merits of a motion for preliminary injunction is within the purview of the trial court and will be overturned only for abuse of discretion. *Medeco Sec. Locks, Inc. v. Swiderek*, 680 F.2d 37, 38–39 (7th Cir. 1981). Under Seventh Circuit precedent, an "evidentiary hearing is required if the nonmoving party raises genuine issues of material fact in response to a motion for a preliminary injunction." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 814 (7th Cir. 2002). Put another way, a trial court "need not conduct an evidentiary hearing unless one is called for as a result of a fact issue *created by the response* to a motion for a preliminary injunction." *Dexia Credit Loc. v. Rogan*, 602 F.3d 879, 884 (7th Cir. 2010) (emphasis added).

Vomela's motion for a preliminary injunction and evidentiary hearing does not mention much, if anything at all, in the way of prospective injury. (ECF 3). Indeed, almost all action verbs that described the nature of Defendants actions are written in past tense. (*See generally id.*) Defendants stress that Vomela's motions "identif[y] no immediate threat," "no specific ongoing or imminent disclosure of confidential information, or misappropriation of trade secrets," and "no evidence that Defendants possess any specific document, information, or trade secret that must be returned." (ECF 15 at 13). Thus, without any concrete allegations by Vomela to suggest an ongoing threat, no "genuine issues of material fact" initially seem present, and an evidentiary hearing would appear unnecessary. *See Promatek*, 300 F.3d at 814.

Yet an examination of Defendants' response in opposition to limited discovery that reveal genuine issues of material fact. On the one hand, Defendants argue that there is no evidence of an "immediate" or "ongoing" threat. (ECF 15 at 13). But at the same time, Defendants include a declaration by Allen-Ross in their response to the motion for a preliminary injunction in which she admits to (1) deleting Vomela work emails and (2) forwarding a Vomela "customer design" to her personal email account after she had announced her intent to terminate employment with Vomela and one day before turning over her work laptop. (ECF 14-1 at 4). Furthermore, Allen-Ross admits that she is still in possession of that design because she used it "for purposes of making [her] Declaration." (*Id.*).

Vomela now argues in its reply briefs that these admissions are precisely why limited discovery and an evidentiary hearing is needed. In Vomela's view, limited

discovery and an evidentiary hearing will help determine whether Allen-Ross took additional confidential information or if the designs downloaded by Allen-Ross were sent to other third parties, thereby presenting a prospective threat to Vomela's business interests. (ECF 19 at 3–4; ECF 20 at 3–5). Without it, Vomela concedes they would be hard-pressed to meet the high evidentiary bar needed for a preliminary injunction. (ECF 19 at 2–3; ECF 20 at 2–3). Indeed, Defendants tacitly endorse the utility of such discovery in their own response brief, arguing that "should the Court permit any limited expedited discovery" it should be "capped" as with *Zimmer US, Inc. v. Simmons*, and limited to "interrogatories and . . . requests focused on *the ongoing use of confidential information*. . . ." (ECF 17 at 12–13) (emphasis added); *see Zimmer US, Inc. v. Simmons*, No. 3:19-CV-907-RLM-MGG, 2019 WL 13269548, at *3 (N.D. Ind. Dec. 19, 2019).

The very existence of a dispute between Vomela and Defendants over why such materials were taken, Defendant Allen-Ross's admission of retained customer designs on a personal device, and allegations of deleted emails (some of which remain unrecoverable for Vomela) demonstrate that genuine issues of material fact exist. *See Promatek*, 300 F.3d at 814; *Dexia Credit*, 602 F.3d at 884. The Court need not now sift through and weigh every issue of material fact raised by the briefing. It is enough that both parties have identified sufficient material issues to suggest an evidentiary hearing would be productive, if not required. *See Promatek*, 300 F.3d at 814; *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997). Though preliminary injunctions do not "conclusively resolve" disputes, they do endure until the case is decided on the merits. *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025). To enter such relief here without a

complete evidentiary record could—depending on the outcome—unnecessarily hinder both Vomela and Sharpline's commercial activities until the conclusion of the case. The Court will not enter such an "extraordinary and drastic remedy" without a clearer picture of the facts. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

## III. Conclusion

For these reasons, Vomela's motions for an evidentiary hearing and expedited discovery are **GRANTED.** (ECF 3; 6). The parties are **ORDERED** to submit a joint proposal outlining a plan for the timing of the evidentiary hearing and the scope of limited discovery necessary to prepare for the evidentiary hearing no later than November 6, 2026. They are **CAUTIONED** that any discovery taken on this expedited basis should be limited to the scope of the arguments they plan to present in the evidentiary hearing.

SO ORDERED on October 29, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT